UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JOHN HARNAGE, III,

                Petitioner,

                                            **MEMORANDUM & ORDER**

                -against-

                                            13 CV 4598 (RJD)

WILLIAM T. HAGGETT, Superintendent,

                Respondent.
-------------------------------------------------------x
DEARIE, District Judge.

      Before the Court is the application of petitioner John Harnage, III, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

      Convicted of driving while impaired by alcohol and sentenced to a conditional discharge in 1988 and again in 1999, Harnage challenges here the validity of his 2010 conviction for Aggravated Vehicular Homicide, N.Y. Penal Law ("PL") §125.14 ("AVH"), and Vehicular Manslaughter in the First Degree, PL §25.13(3) ("VM-1), the two most serious crimes charged in a fourteen-count indictment arising out of a tragic drunk driving fatality.[1] Harnage admitted, when pleading guilty to all charges, that at approximately 3:30 a.m. on April 2, 2009, following a night of heavy drinking,[2] he drove his pick-up truck head-on into another vehicle on a suburban

---

[1] The indictment charged AVH in counts 1 through 4 and VM-1 in counts 5 through 8. The other charges were: Manslaughter in the Second Degree, PL §125.15(1) (count 9); Operating a Motor Vehicle While Under the Influence of Alcohol, Vehicle & Traffic Law ("VTL") §§1192.2 and 1192.3 (counts 10-11): Operating a Motor Vehicle While Impaired, VTL §§1192.4 and 1192.4(a) (counts 12-13); and Reckless Driving, VTL §1212 (count 14).

[2] Harnage consumed "fix to six" vodka drinks at one establishment and "a few more" at another, plus several Xanax tablets earlier that day, and stipulated to a blood alcohol level of 0.11 percent.

roadway, instantly killing the other driver, Karen Ann Naclerio-Negrin, then forty-three and the mother of two.

In his section 2254 petition, Harnage disputes neither his factual culpability for Naclerio-Negrin's death nor his criminal history, but claims that he should have been convicted only of lower-degree crimes. AVM and VM-1 are distinguished from their less severe counterparts by a statutory prior-conduct element which was satisfied, at Harnage's plea, by his 1999 conviction. Harnage argues here, however, as he did on direct appeal, that the state and his attorney misread the applicable New York Penal Code language. He asks this Court, as he urged the state appellate court, to construe that language in a manner that would place the 1999 conviction one-day outside the statutes' reach.

The state appellate court rejected Harnage's statutory reading and, as will be discussed, that ruling, entirely a matter of state law, is beyond the reach of this habeas court. To the extent Harnage's statutory argument is viable as the predicate of his separate Sixth Amendment ineffectiveness claim, which the state court also rejected, Harnage has failed to carry the formidable burden required to disturb that branch of the state court's ruling.

Accordingly, and as further discussed below, the application for habeas relief is denied and the petition is dismissed.

## BACKGROUND

The pertinent facts are few and not in dispute. Harnage entered his plea at a proceeding in the County Court of Suffolk County on April 12, 2010, where he was represented by Raymond Perini, Esq. See ECF #11 at 16-34. He acknowledged his understanding of all the usual waivers, expressed satisfaction with Mr. Perini's representation and also waived his right to appeal.

2

AVH, the most serious charge, carries a maximum sentence of 25 years, see Penal Law §§ 125.14, 70.00. At the time it took Harnage's plea, the court promised that it would "cap" the sentence at the prosecution's recommended five-to-fifteen years. The court advised Harnage that because his crime resulted in a fatality, it was "quite possible that that [*i.e.*, 5 to 15] could be the sentence."

Harnage admitted, as charged in a Special Information accompanying the Indictment, that he was convicted in Suffolk County on June 4, 1999 of Driving While Impaired by Alcohol in violation of Vehicle and Traffic law § 1192.1 (the "1999 DWI"). The parties agree that Harnage committed the crime resulting in this conviction on April 1, 1999, exactly ten years and one day before he caused the death of Naclerio-Negrin.

At sentencing on June 8, 2010, Harnage expressed deep remorse and a strong desire to take responsibility for his actions. See ECF #11 at 59-84. In particular, he admitted that, "It took a tragic accident for a wake-up call" and that "[h]ad [he] addressed [his] drinking problem after [his] second DWI, [he] would not be here today." Counsel added that, during a meeting in his office, "[he]I did not push [Harnage and his mother] to take that offer [of five to fifteen]," and that Harnage had said, "It was my fault. I have to end this."

The trial court imposed the promised five-to-fifteen years on each of the four AVH counts, plus the following, all concurrent: four to twelve years on the four VM-1 counts; four to twelve years on count 9, one year each on counts 10, 11, 12 and 13; and ninety days on count 14.

## DISCUSSION

### A. The Principal Habeas Claims

Harnage argues that he cannot be guilty of the crimes of AVH and VH-1—and that his attorney was ineffective for advising him to plead guilty to those counts—because, under his

3

interpretation of the statutory recidivism element, his 1999 DWI does not qualify. The AVM statute provides as follows:

### § 125.14 Aggravated vehicular homicide

A person is guilty of aggravated vehicular homicide when he or she engages in reckless driving . . . and commits the crime of vehicular manslaughter in the second degree . . ., and

(3) has previously been *convicted of violating* any of the provisions of section eleven hundred ninety-two of the vehicle and traffic law [hereinafter, "New York's DWI laws"] *within the preceding ten years* . . .

McKinney's N.Y. Penal Law §125.14 (emphases added).³

There is no dispute that Harnage was "convicted" on June 4, 1999 "of violating" New York's DWI laws and that June 4, 1999 is "within the ... ten years" preceding the date on which he committed the offense causing the death of Naclerio-Negrin, April 2, 2009. Harnage claims, however, that under the so-called rule of the nearest antecedent—a general rather than categorical principle in the domains of grammar and statutory construction—the statutory phrase "within the preceding ten years" modifies "violating" rather than "convicted." Thus, according to Harnage, to satisfy the statute, the event that must have occurred "within the preceding ten years" is the violation (*i.e.*, commission of the crime), rather than the resulting conviction. Because the date of commission is April 1, 1999, ten years *plus one day* preceding Harnage's April 2, 2009 criminal conduct, Harnage argues that he is "innocent" of AVM and should not have been advised to plead guilty.

---

³ Harnage makes the identical argument with respect VM-1, which contains an identically worded provision. To avoid needless repetition, the Court addresses only the AVM argument but its reasoning extends to the VM-1 counts.

4

Harnage advances this basic statutory argument in two separate claims in the petition. In a claim labeled "Convicted Under Constructively Amended Indictment" ("Ground Two" in the petition, and hereinafter, the "Statutory Claim,"), Harnage asserts, in relevant part: "Based on how New York State computes the 10-year look back, from commission-to-commission, I did not have the requisite Vehicle and Traffic Law violation, and should not, could not, have been charged with an 'Aggravated' offense." ECF #1 at 12. In a separate claim labeled "Ineffective Assistance of Counsel," ("Ground Two" in the petition, hereinafter, the "Ineffectiveness Claim"), Harnage asserts that Mr. Perini "was ineffective because he . . . failed to appeal or argue the improper calculation of the (10) Ten[-]year look-bac[k] which allowed me to be charged with an 'Aggravated' offense."[4] ECF #1 at 8.[5]

On his direct appeal, Harnage fully presented the substance of the Statutory Claim, both as a freestanding ground for reversal that he cast in the language of sufficiency, and as the predicate of an ineffectiveness claim. See ECF #11 at 190 (point

---

[4] Ground One includes additional allegations of ineffectiveness of a secondary nature and requiring little discussion. See *infra* at p. 12.

[5] Briefs submitted by subsequently retained habeas counsel focus on the Ineffectiveness Claim but do not address, by name, what the petition labels "Conviction by Constructively Amended Indictment." Instead, the briefs advance a claim labeled "actual innocence" based on Schlup v. Delo, 513 U.S. 298 (1995) and its progeny. These briefs, however, apparently misapprehend Schlup-based actual innocence, which is an entirely procedural claim not applicable here. See generally Hyman v. Brown, __ F.Supp.3d __, 2016 WL 3866549 (E.D.N.Y. July 13, 2016). What the briefs label "actual innocence" is, in substance, indistinguishable from the Pure Statutory Claim advanced in Ground Two of the petition and as the predicate for the Ineffectiveness Claim.

headings), 202-252 (substantive discussions).[6] The Appellate Division rejected the claim in both its jurisprudential settings.

First, recognizing that "insufficient evidence" was merely Harnage's label for the statutory-interpretation claim, the Appellate Division held that the claim was both unpreserved and without merit. People v. Harnage, 93 A.D. 3d 679, 680 (2d Dep't 2012) ("[Harnage] failed to preserve for appellate review his challenge, in effect, to the sufficiency of the indictment with respect to the charges of [AVM] and [VM-1]... In any event, [his] contention is without merit ... *see* Penal Law §§ 125.13[3], 125.14[3]"), lv. denied, 20 N.Y. 3d 1011 (Jan. 22, 2013).

On ineffectiveness, the Appellate Division first ruled that Harnage's "valid waiver of his right to appeal does not preclude review of his contention that he was deprived of the effective assistance of counsel, to the extent that the alleged ineffective assistance of counsel affected the voluntariness of his plea of guilty." Harnage, 93 A.D.3d at 680. The court then held that, "[c]ontrary to [Harnage's] contention, the record demonstrates that the plea was made knowingly, voluntarily, and intelligently." Id. Finally, the court held that Harnage's "remaining contentions are without merit." Id.

The Statutory Claim is beyond the reach of this Court. Principally, because the claim is a challenge to the state court's interpretation of provisions in the state's penal code, it presents only a question of state law not cognizable on federal habeas. See

---

[6] Argument "A" of Harnage's appellate brief asserts that "[t]he Evidence ... with respect to Four Counts of [AVM] and Four Counts of [VM-1] is Legally Insufficient" because the ten-year period is measured commission to commission. ECF # 11 at 190. The brief also argues that "Trial Counsel Was Ineffective" and that "[his] Plea was Invalid" because counsel misconstrued the ten-year look back provision of the AVM and VM-1 statutes. Id.

generally 28 U.S.C. § 2254(a) (habeas corpus available only when a prisoner is "in custody in violation of the Constitution or law or treaties *of the United States*) (emphasis added); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Harnage insists, however, that because the Appellate Division spoke summarily, it did not actually adjudicate the statutory claim. He asserts:

> the Appellate Division did not address how to calculate the ten-year clock. Respondent's contrary assertion confuses a *claim* that the Appellate Division did clearly adjudicate with the merits of an *argument* that, just as clearly, it did not address. The *only* claim that the Appellate Division held to be 'unpreserved' and 'without merit' . . . . was a challenge "*to the sufficiency of the indictment.*" Respondent does not say why a perfunctory statement that a claim challenging "the sufficiency of the indictment" is "without merit" is a "clear" and explicit answer to the question of how to calculate the ten-year clock, which it plainly is not.

ECF #28 at 8 (emphases added). The briefs further argue that the appellate ruling is not "binding" because that court did not explicitly construe the statute "'in the sense of defining the meaning of a particular statutory word or phrase.'" Id. at 7 (quoting Wisconsin v. Mitchell, 508 U.S. 476, 484 (1993)).

Harnage's position, however, is foreclosed by Harrington v. Richter, 562 U.S. 86 (2011), which "holds and reconfirms" the body of appellate authority recognizing that a state court is "not require[d] to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" for purposes of § 2254(d). Id., 562 U.S. at 100 (quoting 28 U.S.C. § 2254). The high court specifically rejects the kind of effort Harnage undertakes here to speculate about which claims or arguments the appellate court reached:

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing that there was no reasonable basis for the state court to deny relief. This is so whether or not the state court

7

reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

Id., at 98.[7]

Turning to ineffectiveness, the Court concludes, first, that unlike the Statutory Claim, the Ineffectiveness Claim is cognizable. It is well established that a bona fide claim invoking the Sixth Amendment right to effective counsel is not stripped of its federal nature merely because the alleged deficiency of counsel involves the interpretation of state law. See, e.g., Mask v. McGinnis, 233 F.3d 132 (2d Cir. 2000) (affirming grant of habeas on ineffectiveness claim alleging that attorney failed to recognize defendant's status as a second violent felony offender, rather than severe persistent violent felony offender, as those terms are defined by New York statutes).

On the merits, however, the claim fails as a basis for habeas relief. As noted, Harnage says that counsel was constitutionally deficient in his reading of the AVM and VM-1 statutes in

---

[7] Even assuming the presence of a federal issue, the Statutory Claim would be beyond the reach of this Court for procedural reasons. As noted, the Appellate Court rejected the claim as unpreserved, an independent and adequate state law ground. See Lee v. Kemna, 534 U.S. 362, 374 (2002) (federal court "will not take up a question of federal law . . . if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment") (internal citation and quotation omitted); Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011) (failure to follow New York rules for preserving issue for appeal is an independent and adequate state law ground barring federal review). The procedural bar so erected is not dismantled by the fact that the Appellate Division also reached the merits in an alternative holding. Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989). Although the bar may be excused by a showing of cause for the default and resulting prejudice, which can be accomplished by a meritorious claim of ineffective assistance of counsel, see Harris, 489 U.S. at 262; Murray v. Carrier, 477 U.S. 478 (1986), Harnage's ineffectiveness claim, as the Court next concludes, lacks merit.

that, like the prosecution, he applied the statutory phrase "within the preceding years" to "conviction" rather than to "violating." Despite the aspiration fueling Harnage's comprehensive discussion of general principles of statutory construction, the Court's role is *not* to interpret de novo New York's AVM and VM-1 statutes but, instead, to decide the far narrower question left extant under section 2254.

First, the habeas court's deferential review *focuses on the Appellate Division's treatment of the claim*. See generally 28 U.S.C. § 2254(d) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"). Therefore, Harnage must show that, in rejecting his challenge to his attorney's view of the AVM and VM-1 statutes, the Appellate Division acted contrary to, or unreasonably applied, Strickland v. Washington, 466 U.S. 668 (1984) or its progeny. See Hill v. Lockhart, 474 U.S. 52, 57 (1985) (Strickland two-part test "applies to challenges to guilty pleas based on ineffective assistance"). To establish unreasonableness for §2254(d) purposes, Harnage must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). Harrington, 562 U.S. at 103 (internal quotation and citation omitted).

The second constraint arises out of the nature of ineffectiveness. Under Strickland, an attorney's conduct is "deficient" when it "f[a]ll[s] below an objective standard of reasonableness." Id., 466 U.S. at 688. But, "[because] [t]he standards created by Strickland and

9

§ 2254(d) are both highly deferential, . . .when the two apply in tandem, review is doubly so." Harrington, 562 U.S. at 105 (internal quotations and citations omitted). In other words, "review of [state court]'s decision is . . . doubly deferential [because] [courts] take a highly deferential look at counsel's performance [under Strickland] through the deferential lens of § 2254(d)") Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (internal quotations and citations omitted). Therefore, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is *any reasonable argument* that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105 (emphasis added).[8]

Harnage has not come close to making the showing required for habeas relief. Indeed, addressing the merits of the Ineffectiveness Claim necessarily returns to the Statutory Claim and reveals the reality that, in this case, the two are analytically interdependent. When the Appellate Division rejected Harnage's ineffectiveness claim alleging statutory misinterpretation, the only then-available judicial decision on the underlying interpretive question is the other branch of that same Appellate Division decision—which, as discussed, rejected Harnage's position.[9] Absent

---

[8] The Court need only reach the deficiency branch of Strickland. See id. at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one"). In any event, respondent concedes that if Harnage's view of the AVM and VM-1 statutes were correct, he was prejudiced.

[9] The parties dispute the import of a 2015 decision from the Appellate Division, Third Department, that discusses the AVM and VM-1 statutes in a manner arguably sympathetic to the state's view but which does not formally construe the elements. See People v. Hoffman, 130 A.D. 3d 1152 (3d Dep't 2015), lv. app. denied, 26 N.Y.3d 1009 (2015). But Hoffman is not relevant under Strickland, which requires a court to "judge the reasonableness of counsel's challenged conduct . . . viewed as of the time of counsel's conduct." 466 U.S. at 690. Relatedly, trial counsel has submitted an affidavit defending his interpretation as the natural, plain reading, but this submission does not enter the § 2254 calculus either. See Pinholster, 563 U.S. at 181 (2011) ("review under § 2254 (d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

authority construing the AVM and VM-1 statutes differently than the Appellate Division did in People v. Harnage—which Harnage has not produced and this Court has not unearthed—Harnage simply cannot show that it was unreasonable to the degree required for habeas relief for the Appellate Division to have concluded that counsel was reasonable in reading the statute as the appellate court itself ultimately did.

Harnage, who as the habeas applicant bears the burden, has of course produced an ambitious compilation of broad statutory research, including (a) a list of New York statutes employing a syntax different than that used in the AVM and VM-1 statutes that, in his view, would better convey a legislative intent to look back to a date of commission rather than conviction, and (b) cases illustrating application of the "rule of the last antecedent" to statutes that are, in his view, structurally similar to the AVM and VM-1 statutes. Harnage also argues that his view of the statutes is "the natural reading." ECF #18 at 13. Nevertheless, the fact remains that the construction endorsed by counsel and on which his convictions rest is also a natural, plain reading that Harnage has not shown to be objectively unreasonable.[10]

---

[10] In any event, Harnage's "rule of the nearest antecedent" does not apply categorically but only guides interpretation in the absence of other indicia of legislative intent. See, e.g., Barnhart v. Thomas, 540 U.S. 20, 26 (2003) (rule of the last antecedent is "quite sensible as a matter of grammar" but "is not an absolute and can assuredly be overcome by other indicia of meaning"); McKinney's Consolidated Laws of N.Y., Chapter 6 (Construction and Interpretation), § 254 (Ascertainment of Antecedents) ("Relative or qualifying words of clauses in a statute ordinarily are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to others more remote, unless the intent of the statute clearly indicates otherwise").

The available indicia of legislative intent plainly contradict Harnage's position. See, e.g., S. 5517-A, 2007-2008 Reg. Sess. at 12 (Letter dated June 20, 2007 in support of the bill "creating the new crime of aggravated vehicular homicide," stating that the "crime would occur when an individual kills someone while driving with ability impaired by alcohol or drugs, along with the presence of one of the following factors: . . . 2) *a prior DWI conviction with the last ten years*") (emphasis added); N.Y Bill Jacket, 2007 S.B. 5517, Ch. 345 (Budget Division recommendation

## B. The Petition's Other Claims

The petition alleges that counsel was also ineffective because he "failed to do any investigation that was meaningful and necessary" and that he "misled" petitioner about his sentencing exposure in that, at one point, he told petitioner that his sentence would be 3 to 9 years and later, after petitioner was sentenced, he wrote him a letter stating that he thought the sentence was 5 to 10, not 5 to 15 years. ECF # 1 at 8. These allegations do not establish a basis for habeas relief because they appear to be unexhausted, Pet. Supp., ECF # 18 at 8, but, in any event, are unsubstantiated.

The petition also advances a broad claim labeled "Violation of Due Process and Equal Protection." ECF # 1 at 3. Liberally construed, the alleged "supporting facts" are, in substance, merely reiterations of Harnage's principal statutory argument and warrant no further discussion. The references to "due process" and "equal protection" in Harnage's appellate brief, see, e.g., ECF #11 at 205, are interwoven within the Statutory Claim, but to the extent they were separate claims, the Appellate Division denied them when holding that Harnage's "remaining contentions are without merit," Harnage, 93 A.D.3d at 680, and the requisite showing under §2254(d) with respect to that adjudication has not been made.

---

on S 5517-A, which "would amend [the] Penal Law and Vehicle and Traffic Law to create the crimes of aggravated vehicular assault and aggravated vehicular homicide," which "creat[e] heightened penalties for crimes related to alcohol and drug[-]related traffic fatalities," applicable to, inter alia, "[i]ndividuals . . . who have a prior DWI conviction with the past 10 years." See also "Depraved Indifference Murder in the Context of DWI Homicides in New York," 82 St. John's L. Rev. 1537, 1580 ("In 2006, the legislature . . . enact[ed] another comprehensive reform of the state's drunk driving laws. Among the changes was the addition of four new aggravating factors to the crime of vehicular manslaughter in the first degree . . . including . . . (2) a previous DWI conviction"). Curiously, Harnage's latest submission is a motion urging the Court not to consider the legislative history.

Finally, the briefs of counsel argue that "if the Appellate Division had construed the statute in the manner now suggested by Respondent," that construction would be "an unforeseeable judicial enlargement of a criminal statute" violating Harnage's "due process right to fair warning of what constitutes criminal conduct." Pet. Sur-surreply, ECF Doc. 28 at 9. This claim is not cognizable here because Harnage did not present it to any New York court.[11]

## CONCLUSION

For the reasons discussed, Harnage's application for relief under 28 U.S.C. § 2254 is denied in its entirety. Because Harnage has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

SO ORDERED.

Dated: Brooklyn, New York
August 2%, 2016

s/ RJD

_____
RAYMOND J. DEARIE
United States District Judge

---

[11] The claim labeled "due process" in Harnage's appellate brief addressed arbitrariness, not notice.

13